UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

JAMES EDWARD COLEN,

      Plaintiff,               Civil Action No. 14-12948
                                  Honorable Paul D. Borman
v.                              Magistrate Judge Elizabeth A. Stafford

CORIZON MEDICAL SERVICES, *et al.*

      Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS CORIZON HEALTH, INC., ALFORD, BRADY, JINDAL, MARTIN, PRASAD, AND SUDHIR'S MOTION FOR SUMMARY JUDGMENT [ECF No. 79]

## I.    INTRODUCTION

Plaintiff James Edward Colen, a prisoner proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983, alleging various violations of both his Eighth and Fourteenth Amendment rights during his incarceration at Gus Harrison Correctional Facility ("ARF") in Adrian, Michigan.[1]  The complaint alleges liability on the part of employees of the Michigan Department of Corrections and of Corizon Health Inc. ("Corizon").  [ECF No. 13].  Defendants Corizon Health, Inc., Danielle Alford, P.A., Darrell

_____

[1] The Honorable Paul D. Borman referred this matter for report and recommendation on dispositive matters. [ECF No. 9; ECF No. 33].

1

Brady, M.D., Rosilyn Jindal, P.A., Minnie Martin, M.D., Anil Prasad, M.D., and Bhamini Sudhir, M.D., have filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a), contending that Colen failed to exhaust all administrative remedies before bringing certain claims, and that all of his claims fail to establish liability under the Constitution or state law.  [ECF No. 79].  They also contend that some claims were beyond the relevant statutes of limitations when made.  [*Id.*].

The Court finds a genuine issue as to the exhaustion argument, but otherwise **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED**, that Colen's federal claims be **DISMISSED WITH PREJUDICE**, and that the Court decline to exercise supplemental jurisdiction over Colen's state-law claims and **DISMISS** them **WITHOUT PREJUDICE**.

## II.   BACKGROUND

Colen's claims stem from the allegedly inadequate medical care he received after he allegedly broke his right foot and injured his ankle during a basketball game on November 10, 2010.  [ECF No. 13, PageID 82].  He contends that defendants were deliberately indifferent to his medical needs for a period of three years following this injury, causing his symptoms to exacerbate.

2

A week after the basketball injury, two nurses diagnosed Colen with a sprained ankle and provided him with an ace bandage to wrap the injury. [*Id.*].  He claims that, even with the bandage, the injury "became extremely worse" when he attempted to walk and he "continued in pain and suffering for the rest of the year."  [*Id.*].  In January 2011, P.A. Jindal examined Colen, diagnosing him with an ankle sprain.  [ECF No. 79-2, PageID 660-61; ECF No. 81-1, PageID 820-21].  Colen requested an x-ray, but Jindal denied the request because "[t]he x-ray would not provide additional information for diagnostic purposes of a sprain or change the course of treatment."  [ECF No. 79-2, PageID 661; *see also* ECF No. 81-1, PageID 821].

Jindal saw Colen again near the end of January, and then in early February, when he complained of decreased mobility, limping, swelling, and tenderness.  [ECF No. 79-2, PageID 661].  Jindal examined his ankle and ruled out a foot or ankle fracture, but found Colen to have elevated blood pressure, and she ordered regular checks, baseline lab work, and knee-length support hose.  [*Id.*].  She instructed Colen on methods to reduce his blood pressure and related edema.  [*Id.*, PageID 661-62].  In March, Jindal found Colen's blood pressure readings to indicate prehypertension, and she followed up with him.  [*Id.*].

3

Jindal examined Colen again in April 2011, and suspected that he had prepatellar bursitis due to swelling, popping, and mild pain associated with his left knee. [*Id.*]. She also suspected that he had arthritis, due to his ongoing complaints of joint pain and swelling, but x-rays of his left wrist and left knee returned normal. [*Id.*, PageID 662-63]. She treated his bursitis and suspected arthritis with an ACE bandage, rest, ice, Tylenol, and Naprosyn. [*Id.*]. Notably, Jindal noted that Colen did not complain of pain in his right foot or ankle, inconsistent with a broken foot. [*Id.*].

In May 2011, Colen sent a "kite"[2] to the healthcare staff explaining that he could barely walk and had begun to experience additional issues with his knee, and requesting to see a doctor. [ECF No. 13, PageID 83]. The kite was allegedly ignored by a nurse, so he sent another kite later in May describing his issues. [*Id.*, PgID 83]. He was again seen by Jindal, who noted a limited range of motion in his right foot, but no edema. [ECF No. 79-2, PageID 663]. As for his left and right knees, Jindal found no joint deformity, swelling, erythema, or effusion, and full range of motion. [*Id.*]. He was instructed to continue taking Naprosyn and Tylenol, to increase fluid intake, and to try certain exercises. [*Id.*, PageID 663-64; ECF No. 13,

---

[2] A "kite" is a written communication by a prisoner to request services from prison staff, including medical care. *See Peterson v. Foco*, No. 1:09-CV-233, 2010 WL 5058352, at *2 (W.D. Mich. Dec. 6, 2010) (collecting cases).

4

PageID 83].  Defendants also note that, according to the medical record, Colen told an officer that he did not need his elevator pass.  [ECF No. 81-1, PageID 851].

In July 2011, Jindal saw Colen and diagnosed him with a peroneal ankle sprain.  [ECF No. 79-2, PageID 664].  She prescribed an ACE bandage, elevation, and ice, and concluded again that an x-ray was not necessary.  [*Id.*].  Then in mid-October 2011, after filing a kite asking to see a doctor instead of the physician's assistant, Colen was told that a nurse would determine whether he needed to see a medical provider, and he was not scheduled to see a doctor as he requested.  [ECF No. 13, PgID 84].

In April 2012, Colen sent a healthcare kite describing his ongoing health issues.  [*Id.*, PgID 85].  He claims that he was not seen by a doctor at that time, but the medical record shows an examination by Dr. Prasad two days after the kite, who prescribed an increased dosage of Naprosyn, Tylenol, an ACE bandage, rest, ice, and a left knee brace.  [ECF No. 81-1, PageID 886-88].  Colen maintains that this visit did not take place.  [ECF No. 86, PageID 1282].  He saw Jindal again in May, but he did not complain of any issues with his feet.  [ECF No. 79-2, PageID 665].  She found a positive Tinel's sign ("tingling from nerve compression") and prescribed prednisone and continued the Naprosyn.  [*Id.*, PageID 665-66].

5

In September 2012, Colen sent another kite requesting adequate healthcare and claiming that his civil rights were being infringed upon. [ECF No. 13, PgID 85].  He kited again in October and was seen by Jindal, despite his desire to see a doctor instead of a physician's assistant.  [*Id.*]. Jindal ordered another set of x-rays, which showed "markedly advanced arthritic changes at the left knee joint articulating surface."  [ECF No. 79-2, PageID 666; ECF No. 81-1, PageID 904].  The x-ray of Colen's right foot showed a large plantar calcaneal spur and mild arthritic changes.  [*Id.*].  He had mild soft tissue swelling over the top of his foot as well as a bunion on the great toe.  [*Id.*].  No displaced fractures were noted, and Jindal opines that the results indicate chronic degenerative changes of arthritis, not a right foot fracture.  [ECF No. 79-2, PageID 667].

Colen says that on November 4, 2012, he sent a kite describing his declining health and wanting to know the results of his x-rays.  [ECF No. 13, PageID 86].  He states that he received a response on November 13 stating that he was scheduled to see a medical professional.  [*Id.*].  He alleges that he responded that same day with another kite stating that he was being inhumanely treated and denied his "civil rights" and medical care.  [*Id.*].  According to Colen, a response he received two days later resolved his kite by telling him to "[c]ontinue to kite if the symptoms do not

6

improve." [*Id.*].  But medical records show that he was seen by Jindal on

November 13 as well.  [ECF No. 81-1, PageID 907-09].  At that time, Jindal

diagnosed Colen with localized osteoarthritis, and explained his x-rays and

diagnosis to him.  [ECF No. 81-1, PageID 907-08; ECF No. 79-2, PageID

667].  He was given instructions to alleviate his symptoms and was ordered

a bottom bunk detail, which he had previously been denied.  [*Id.*].

In April 2013, Colen saw Jindal again, and Colen demanded to see a

board certified doctor instead.  [ECF No. 81-1, PageID 920; ECF No. 79-2,

PageID 668].  Jindal states that, as a midlevel provider, she only refers a

patient to a doctor if it is necessary in her medical judgment.  [ECF No. 79-

2, PageID 668].  Here, she found that his condition remained consistent

with his previous diagnosis of localized osteoarthritis and requested a knee

brace for him, but Haresh B. Pandya, M.D. did not approve that request,

reasoning that braces do not help.  [ECF No. 79-2, PageID 669; ECF No.

81-1, PageID 922-23].

In June 2013, Colen was seen again by Dr. Prasad.  [ECF No. 81-1,

PageID 933-35].  Colen alleges that he was not personally attended to

during this visit and that he was only prescribed Tylenol and an ACE

bandage.  [ECF No. 13, PageID 89].  Medical records indicate that Tylenol

was added to his current Naprosyn medication, and that Dr. Prasad also

7

provided a detail for a cane.  [ECF No. 81-1, PageID 935].

Colen was seen by Jindal again in July 2013, but continued to kite throughout the year in an attempt to see another doctor.  [ECF No. 13, PageID 90].  He also had cortisone shots for his knee rescheduled repeatedly, with Dr. Brady eventually finding them unnecessary.  [*Id.*; ECF No. 79-3, PageID 684].  In September, Colen was seen by Dr. Brady for the first time.  [*Id.*].  Dr. Brady reviewed the prior x-rays, finding that they showed only arthritic changes, and examined Colen's left knee, which was warm, swollen, tender, with limited range of motion and crepitations.  [ECF No. 79-3, PageID 684].  Colen contends that Dr. Brady refused to thoroughly examine his right foot.  [ECF No. 13, PgID 90].  But Dr. Brady states that he noted no deformity in Colen's right foot, ruling out a fracture and finding his symptoms consistent with the arthritis diagnosis.  [ECF No. 79-3, PageID 684; ECF No. 81-1, PageID 958-60].  X-rays of the left knee and right foot were ordered.  [*Id.*].

In October 2013, Colen claims that he discussed the x-rays with Dr. Brady and was informed that his right foot had been broken in the past.  [ECF No. 13, PageID 91].  Later that month, medical records indicated that Colen saw Dr. Sudhir for the first time within the relevant period.  [ECF No. 81-1, PageID 972-73].  Dr. Sudhir noted severe pain in Colen's knee and

foot, found severe osteoarthritic changes with deformity in the left knee, restricted range of motion, and inability "to do any tests due to joint contracture."  [*Id.*].  In Colen's right foot, Dr. Sudhir found a bony enlargement due to osteoarthritic changes, restricted range of motion in all directions, inversion of the foot at rest, and tenderness over the bottom of the heel.  [*Id.*, PageID 973].  She also found moderate osteoarthritic changes in the right knee.  [*Id.*].  She assessed Colen with advanced osteoarthritis and stated that he will need a total knee replacement at some time, ordering him a wheelchair and elevator access for the time being. [*Id.*].  Defendants note that Dr. Sudhir did not find the presence of a fracture in his right foot, and did not order cortisone injections.  [*Id.*].

Colen alleges that in November, a nurse told him that his x-rays indicated that his foot had been previously broken, and that he will always have pain where it healed improperly.  [ECF No. 13, PageID 91].  He also kited later that month for a refill of pain medication since he had run out, but he was never scheduled for a visit and his medication was never refilled. [*Id.*].  The medical record indicates that Colen had another x-ray of his left knee that month, which was reviewed by Khawaja H. Ikram, D.O.  [ECF No. 81-1, PageID 982-84].  Dr. Ikram also physically examined Colen's knee, finding moderate swelling, mild palpable tenderness, hindered reflexes, and

9

that Colen walked on his tiptoes with knee in a flexed position.  [*Id.*, PageID 983].  His x-ray showed marked degenerative changes of the left knee and complete deterioration of the medial and lateral compartment, and Dr. Ikram assessed Colen to have "[s]evere DJD of the left knee."  [*Id.*].  Dr. Ikram noted that Colen could "remember no previous injury, fall or trauma that brought on his complaints" and thus suspected the "possibility of sclerosis secondary to infection versus drug abuse" due to Colen's history of crack cocaine usage.  [*Id.*].  He found that Colen "will need to be a candidate for a total knee replacement."  [*Id.*].

In April 2014, Colen underwent total knee arthroplasty (replacement). [ECF No. 81-1, PageID 1073-76].  Afterwards, he was seen by P.A. Alford, who monitored his condition until his discharge in May.  [*See generally* ECF No. 81-1, PageID 1090-185].  Alford is not mentioned in the complaint until the day before his release, when she allegedly offered to help with his foot pain but did not follow up, and on the day of his release, when she allegedly sent him for x-rays.  [ECF No. 13, PageID 93].  The day after Colen's release, he was evaluated by Jindal, where he alleges they argued about whether his right foot had been broken.  [*Id.*, PageID 93-94].  Jindal found his current complaints of pain to be consistent with the previous diagnosis of chronic arthritic pain.  [ECF No. 79-2, PageID 673-74].

In May, Colen was seen by Dr. Martin, who examined his right foot, noting that it was an alleged basketball injury and that there was no "bruising, clicking or popping, locking, numbness, tingling or prickling or weakness." [ECF No. 81-1, PageID 439]. Colen alleges that he was "wincing in great pain" during the examination of his foot, and that he was simply told to leave after the examination. [ECF No. 13, PageID 94]. The medical record does not show any change in his medication or prescriptions. [ECF No. 81-1, PageID 439]. Colen has since been definitively diagnosed with rheumatoid arthritis. [ECF No. 79-3, PageID 678, 692].

According to Colen, defendants are liable under 42 U.S.C. § 1983 for violating the Eighth and Fourteenth Amendments by demonstrating deliberate indifference to his medical needs and his rights to liberty and fair and equal treatment; caused him to suffer emotional stress; were negligent in their duties; and sanctioned or implemented policies and practices that led to his denial of adequate medical care. [ECF No. 13, PageID 96-98,100-17].

## III.   ANALYSIS

Defendants argue that Colen's claims against them should be dismissed because he has failed to exhaust all of his administrative

11

remedies prior to bringing suit against some defendants, and because his allegations do not rise to the level of deliberate indifference to a serious medical need, or medical malpractice under state law.  They further argue that some claims Colen raises were filed after the relevant statutes of limitations expired.  The Court agrees for the reasons stated below.

### A.

Rule 56(a) provides that "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986); *Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).  The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).

If the movant satisfies its burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial.  *Celotex*, 477 U.S. at 324; *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001).  In deciding a summary judgment

motion, the Court must view the factual evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88(1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

When feasible, the Court will decide exhaustion disputes before addressing the merits of the claims. *See Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014). A dismissal for failure to exhaust administrative remedies, even when decided on summary judgment, is without prejudice. *Boyd v. Corr. Corp. of America*, 380 F.3d 989, 994 (6th Cir. 2004).

**B.**

The Prison Litigation Reform Act ("PLRA") requires prisoners to "properly" exhaust all "available" administrative remedies prior to filing a lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006). Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court and produces a useful administrative record. *Jones v. Bock*, 549 U.S. 199, 204 (2007).

13

MDOC Policy Directive 03.02.130 sets forth a three-step procedure prisoners must follow in order to complete the administrative review process and properly exhaust grievances.  A prisoner must attempt to informally resolve the problem with the allegedly offending staff, and then may file a Step I grievance regarding any unresolved issues with a grievance coordinator.  MDOC Policy Directive 03.02.130, ¶ P and R (effective July 9, 2007).[3]  The prisoner may then file a Step II grievance appeal within ten days of receiving the Step I response or, if no response was received, within ten business days after the date the response was due.  *Id.* at ¶ BB.  The same schedule applies to a Step III appeal – it is due within ten business days of receiving the Step II response or, if no response was received, within ten business days after the date the response was due.  *Id.* at ¶ FF.  Prisoners must appeal their grievances through Step III and wait until receipt of a Step III response, or until the response is past due, before filing suit.

Defendants argue that Colen could not have received a Step III response to a grievance involving Alford or Dr. Martin, as none of the recorded Step III grievances from June 2010 to the date of this suit referred to them, and his most recent Step III grievance was resolved on February

---

[3] The Policy Directive is available at:
https://www.michigan.gov/documents/corrections/03_02_130_200872_7.pdf

14, 2014, which is before his allegations against Alford and Dr. Martin took place.  [ECF No. 79, PageID 647; ECF No. 79-4].  Normally this requires dismissal.  *See, e.g., Freeman v. Francis,* 196 F.3d 641, 645 (6th Cir. 1999) ("[W]e must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed").  Thus, defendants have satisfied their burden by showing that Colen had no completed grievances before the date this case was filed.

Colen responds that he filed a grievance against Alford and Dr. Martin in May 2014, after returning from his knee replacement surgery, and that it was wrongfully rejected for being duplicative of another grievance.  [ECF No. 86, PageID 1287].  This raises a question of fact, as an improper rejection would constitute exhaustion, allowing Colen to proceed with the case.  *Johannes v. Washington*, No. 14-11691, 2016 WL 1253266, at *6 (E.D. Mich. Mar. 31, 2016).  The burden is on the defendants to "show that every reasonable jury would think the rejections were proper."  *Id.*  Defendants did not respond to this argument in their reply, so a question of fact exists regarding whether he has exhausted his administrative remedies with respect to that claim.

### C.

Colen seeks relief under Section 1983 for violations of his Eighth and

Fourteenth Amendment rights.  [ECF No. 13, PageID 103-10].  Defendants argue that the complaint only puts forth Eighth Amendment claims.  [ECF No. 79, PageID 648].  In response, Colen states that his equal protection and due process claims were "properly stated" in a grievance in which he alleged to have been treated differently than inmates of other races.  [ECF No. 86, PageID 1290].  But these claims are not present in the complaint itself, and "[e]ven under our liberal pleading standards, a plaintiff must at least give the defendant fair notice of what the claim is and the grounds upon which it rests, by providing either direct or inferential allegations respecting all the material elements to sustain a recovery." *See In re Commonwealth Institutional Sec., Inc.*, 394 F.3d 401, 405 (6th Cir. 2005) (citations and internal quotation marks and brackets omitted).  As a consequence, any claim not raised in the complaint cannot be considered, *McColman v. St. Clair Cty.*, 479 F. App'x 1 (6th Cir. 2012), meaning that only his Eighth Amendment claims can be considered.

The Eighth Amendment's Cruel and Unusual Punishment Clause prohibits prison officials from inflicting "unnecessary and wanton infliction of pain" upon inmates.  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (internal citations omitted).  "'Deliberate indifference' by prison officials to an inmate's serious medical needs constitutes 'unnecessary and wanton

16

infliction of pain' in violation of the Eight[h] Amendment's prohibition against cruel and unusual punishment." *Miller v. Calhoun Cty.*, 408 F.3d 803, 812 (6th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

A deliberate indifference claim has an objective and a subjective component. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). The objective component requires a plaintiff to allege that the medical need at issue is "'sufficiently serious.'" *Id.* at 702-03 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703. However, a plaintiff does not have to show that the prison official acted "for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. Rather, a plaintiff need only show that the official "recklessly disregard[ed]" a substantial risk of serious harm. *Id.* at 836.

Colen has alleged very little contact with some of the defendants in this matter. Alford is only mentioned once in the complaint, having seen him on two concurrent days in May 2014. [ECF No. 13, PageID 93]. She was allegedly unhelpful with his foot pain on the first day, and on the

17

second she sent him for x-rays of his foot after learning this had not yet been done. [*Id.*]. Dr. Martin and Dr. Sudhir each only saw Colen once, and while Dr. Martin is alleged to have caused Colen some pain while examining his foot, there are no claims made about Dr. Sudhir indicating that she caused any harm to Colen. [*Id.*, PageID 91, 94]. In fact, Colen alleges that Dr. Sudhir correctly noted his previously broken foot, referred him to an orthopedic surgeon, and requested a wheelchair for him. [*Id.*, PageID 91]. Similarly, Colen references only one meeting with Dr. Prasad in the complaint. [ECF No. 13, PageID 89]. Colen alleges that he was not thoroughly examined during this visit, and that he was "only" prescribed Tylenol and an ACE bandage. [*Id.*]. The medical record provided by defendants confirms these prescriptions, but also shows his Naprosyn prescription and that Dr. Prasad provided a detail for a cane to be issued. [ECF No. 81-1, PageID 933-35].

As to these defendants, there is no question that Colen cannot state a claim. Each of them was involved with his treatment, and he may have disagreed with the treatment provided, but this does not rise to the level of deliberate indifference. *Mayfield v. Miles*, No. 13-10341, 2015 WL 736421, at *3 (E.D. Mich. Feb. 20, 2015), *aff'd* (Dec. 21, 2015). *See also Comstock v. McCray*, 273 F.3d 693, 703 (6th Cir. 2002) ("The requirement that the

official have subjectively perceived a risk of harm and then disregarded it is meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment.") (citing *Farmer*, 511 U.S. at 834; *Estelle*, 429 U.S. at 106).  Furthermore, accidentally causing Colen pain or discomfort during treatment is not cognizable under § 1983. *Estelle*, 429 U.S. at 105.

Defendant Jindal was by far the most involved with Colen's treatment, and had multiple visits with him yearly throughout the dates covered by the complaint.  But the allegations against her, coupled with the facts she attested to by declaration, would not allow a reasonable jury to find her liable for deliberate indifference to Colen's medical needs.  [ECF No. 79-2]. Beginning with his first visit with Jindal, Colen blames her repeatedly for not being scheduled to see a doctor.  [ECF No. 13, PageID 83].  Jindal admits that it is her responsibility to decide, using her medical judgment, if a patient needs to see a doctor or specialist.  [ECF No. 79-2, PageID 668-69].  Colen also repeatedly contends that his fractured right foot was misdiagnosed, while the record shows that Jindal, Dr. Brady and Colen's other doctors, P.A.'s and nurses insist that his foot was not fractured.  [ECF No. 79-2, PageID 659; ECF No. 79-3, PageID 692; ECF No. 81-1].  Dr.

Brady and Jindal also attest that his treatment would have been appropriate even in the instance of a fracture, and that said fracture would not have caused his now-diagnosed rheumatoid arthritis. [ECF No. 79-2, PageID 659; ECF No. 79-3, PageID 692].

Colen disagrees with the treatment he received from Jindal, but this largely stems from the alleged misdiagnosis, and any such disagreement with treatment and misdiagnosis does not constitute deliberate indifference. *Mayfield*, 2015 WL 736421, at *3; *Comstock*, 273 F.3d at 703. Even a difference of opinion among doctors is generally insufficient to state a claim of deliberate indifference. *Colwell v. Corizon Healthcare Inc.*, No. 11-CV-15586, 2014 WL 6686764, at *22 (E.D. Mich. Nov. 26, 2014), *aff'd* (Oct. 7, 2015). Colen was provided with medical care for his knee and foot throughout the time period containing his allegations, as documented by his complaint. Given the record of care, no reasonable jury could find that Jindal was deliberately indifferent to Colen's serious medical needs.

Colen alleges that Dr. Brady was responsible for the lack of cortisone shots, which were at one time scheduled but later canceled. [ECF No. 13, PgID 90]. He also claims to have seen Dr. Brady on two occasions within one month in 2013, in which Dr. Brady chose to focus on his knee rather than his foot. [*Id.*, PageID 90-91]. Dr. Brady allegedly acknowledged that

his foot had been previously broken in the latter meeting.  [*Id.*, PageID 91].

Dr. Brady denies this, stating that Colen did have "old healed trauma" in his

foot, but that it was not necessarily a fracture, and that no further treatment

would have been indicated even if it had been a fracture.  [ECF No. 79-3,

PageID 685].  Colen has not provided evidence rebutting Dr. Brady's

attestation that, even with a prior fracture, no treatment was warranted

other than what he received.

Lastly, Colen claims that Corizon is also liable for his alleged

mistreatment.  [ECF No. 13, PageID 116-17].  "As a contracted provider of

prison health services, Corizon acted in the capacity of a governmental

actor."  *Edwards v. Prasad*, No. 15-CV-11424, 2016 WL 7115959, at *6

(E.D. Mich. Oct. 31, 2016), *report and recommendation adopted,* No. 15-

CV-11424, 2016 WL 7100492 (E.D. Mich. Dec. 6, 2016).  Municipal liability

arises only where "the challenged conduct occurs pursuant to a

municipality's 'official policy' such that the municipality's promulgation or

adoption of the policy can be said to have 'caused' one of its employees to

violate the Plaintiff's constitutional rights." *D'Ambrosio v. Marino*, 747 F.3d

378, 386 (6th Cir. 2014) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S.

658, 692 (1978)).  Here, for the reasons stated above, Colen has not

established that his constitutional rights have been violated.  Furthermore,

the allegation in his response that Corizon's policy or custom of directing "shot in the dark" diagnoses is unsupported by any evidence or examples beyond what he alleges happened to him personally.  Colen "may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

As a final note, the statute of limitations bars some of Colen's Eighth Amendment claims.  The applicable statute of limitations for a Section 1983 civil rights action is "the state statute of limitations governing actions for personal injury."  *McCune v. City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988).  The Sixth Circuit has held that Michigan's three-year limitations period for personal injury claims is the appropriate statute of limitations for § 1983 actions that arise in Michigan.  *Drake v. City of Detroit, Michigan*, 266 F.App'x 444, 448 (6th Cir. 2008) (citing Mich. Comp. Laws. § 600.5805(10)).  This limitations period bars Colen's claims against Jindal before July 25, 2011, as well as any derivative claims against Corizon arising from her actions before that date.  Colen argues that the statute of limitations should be tolled from when he reasonably became aware of or knew of the injury, but he provides no authority to allow tolling, and

22

Michigan has essentially eliminated the application of equitable tolling. *Trentadue v. Buckler Lawn Sprinkler,* 479 Mich. 378, 407(2007); *Chandler v. Wackenhut Corp.*, 465 F. App'x 425, 431 (6th Cir. 2012) (after *Trentadue*, "courts have applied the doctrine in the statute-of-limitations context only to cases involving a defendant who led the plaintiff to believe that the limitations period would not be enforced.").

For these reasons, Colen's Section 1983 claims should be dismissed.

### D.

Colen also brought state law claims of intentional infliction of emotional distress, battery, and gross negligence against the defendants, but they argue that his claims sound in and should be treated as medical malpractice, and subject to Michigan's statutory requirements for such claims.  In Michigan, a claim sounds in medical malpractice if it "pertains to an action that occurred within the course of a professional relationship," and "raises questions of medical judgment beyond the realm of common knowledge and experience."  *Bryant v. Oakpointe Villa Nursing Ctr.*, 471 Mich. 411, 422 (2004).  If so, "the action is subject to the procedural and substantive requirements that govern medical malpractice actions."

The Court agrees that Colen's state law claims sound in medical malpractice.  The dispute centers around whether Colen was properly

diagnosed and treated at various times by various health care providers within his course of treatment for an injured knee and foot.  A jury would require expert guidance in order to decide in favor of either party, as the answer would require medical judgment that the lay juror simply does not have.  However, defendants' contention that the case may be simply dismissed for failure to file the required "affidavit of merit" for medical malpractice cases under M.C.L. § 600.2912d is not as simple as they make it out to be.

In deciding a state-law claim in federal court, the court applies state law for substantive issues, and federal law for procedural ones.  *Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938).  Whether a claim for gross negligence or on other state-law grounds actually sounds in state-law medical malpractice is a substantive issue subject to, in this case, Michigan law. *Jones v. Corr. Med. Servs., Inc.*, 845 F. Supp. 2d 824, 845 (W.D. Mich. 2012).  But the "affidavit of merit" requirement is procedural, and thus not required in federal court claims.  *Stojcevski v. Cty. of Macomb*, 143 F. Supp. 3d 675, 693 (E.D. Mich. 2015), *reconsideration denied,* No. CV 15-11019, 2016 WL 2893016 (E.D. Mich. May 18, 2016) citing *Long v. Adams*, 411 F.Supp.2d 701, 705 (E.D. Mich. 2006).[4]  The state law claims should

---

[4] *But see Jones*, 845 F. Supp. 2d at 855, finding that the affidavit

therefore not be dismissed for their lack of an affidavit of merit.

But as Colen has no remaining claims based on federal law, the Court must determine whether to exercise supplemental jurisdiction of the state law claims under 28 U.S.C. § 1367. *See Campanella v. Commerce Exch. Bank*, 137 F.3d 885, 892–93 (6th Cir. 1998 ). Under § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction over the remaining state law claims. *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996 ) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims."). Here, there is no compelling reason to retain supplemental jurisdiction over Colen's state law claims.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment should be **GRANTED**, Colen's federal claims should be **DISMISSED WITH PREJUDICE**, and the Court should decline to exercise supplemental

---

requirement is not a pleading or part of a pleading and is not in conflict with the federal rules. The *Jones* court found that not applying the requirement could lead to forum-shopping and inequitable administration of the laws. But *Barnett v. Hidalgo*, 478 Mich. 151, 161 (2007), described the affidavit of merit as "part of the pleadings," and M.C.L. § 600.2912d requires the affidavit to be filed concurrently with the complaint. In federal court, this conflicts with Federal Rule of Civil Procedure 8(a), which sets forth the *only* rules governing non-heightened pleadings in federal court. *See Long v. Adams*, 411 F. Supp. 2d at 707 (E.D. Mich. 2006). Thus, this Court agrees with *Long* that the affidavit should not be required in federal court.

jurisdiction over Colen's state-law claims and **DISMISS** them **WITHOUT**

**PREJUDICE**.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: January 18, 2017

## **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any

further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*,

638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but

fail to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation.  *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection

must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this Report and

Recommendation to which it pertains.  Not later than fourteen days after

service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 18, 2017.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager