UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

JAMES EDWARD COLEN,

      Plaintiff,                  Civil Action No. 14-12948
                                      Honorable Paul D. Borman
v.                                Magistrate Judge Elizabeth A. Stafford

CORIZON MEDICAL SERVICES, *et al.*

      Defendants.
_____/

**AMENDED[1] REPORT AND RECOMMENDATION TO GRANT
DEFENDANTS VANAUSDALE, KOPKA, ROTHHAAR AND KLEE'S
<u>MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT [R. 71]</u>**

## I.    INTRODUCTION

Plaintiff James Edward Colen, a prisoner proceeding *pro se*, brings

this action pursuant to 42 U.S.C. § 1983, alleging various violations of both

his Eighth and Fourteenth Amendment rights during his incarceration at

Gus Harrison Correctional Facility (ARF) in Adrian, Michigan.[2]  The

complaint alleges liability on the part of employees of the Michigan

_____

[1] This report and recommendation is made pursuant to an order [R. 105] vacating a prior report and recommendation [R. 89] due to inconsistencies with a prior order in this matter [R. 77].
[2] The Honorable Paul D. Borman referred this matter for report and recommendation on dispositive matters.  [R. 9; R. 33].

Department of Corrections (MDOC) and of Corizon Health Inc. [R. 13].

MDOC defendants Lynn VanAusdale, Lori Kopka, Tammra Rothhaar and

Paul Klee, have filed a motion to dismiss, or in the alternative, a motion for

summary judgment pursuant to Federal Rules of Civil Procedure 12 and

56(a).[3] [R. 71]. With respect to these defendants, Colen has exhausted

some of his administrative remedies, but failed to demonstrate deliberate

indifference as to the exhausted claims. Therefore, the Court

**RECOMMENDS** that the MDOC defendants' motion to dismiss and/or for

summary judgment [R. 71] be **GRANTED**, that his claims against

VanAusdale, Kopka, and Klee be **DISMISSED WITH PREJUDICE**, and

that his claims against Rothhaar be **DISMISSED WITHOUT PREJUDICE**.

## II.    BACKGROUND

Colen's claims stem from the allegedly inadequate medical care he

received after he allegedly broke his right foot and injured his ankle during

a basketball game on November 10, 2010. [R. 13, PgID 82]. Colen

contends that ARF personnel were deliberately indifferent to his medical

needs for a period of three years following this injury, causing his

symptoms to exacerbate.

---

[3] The Corizon defendants have filed a separate motion for summary
judgment that this Court has recommended be granted. [R. 79; R. 94].

A week after the basketball injury, two nurses diagnosed Colen with a sprained ankle and provided him with an ace bandage to wrap the injury. [*Id.*].  He claims that, even with the bandage, the injury "became extremely worse" when he attempted to walk and he "continued in pain and suffering for the rest of the year."  [*Id.*].  In May 2011, Colen sent a "kite"[4] to the healthcare staff explaining that he could barely walk and had begun to experience additional issues with his knee, and requesting to see a doctor. [*Id.*, PgID83].  ARF Nurse Lynn VanAusDale responded to this request, stating that she would schedule an appointment.  [*Id.*, PgID 83, 149-50]. Colen contends that this appointment was never scheduled and that Nurse VanAusdale therefore failed to provide him with adequate medical care. [*Id.*, PgID 83, 98].

Later in May, Colen sent another kite describing his issues and was seen by both an ARF physician's assistant and nurse, who also diagnosed his injury as a sprained ankle.  [*Id.*, PgID 83].  They prescribed him pain medication and recommended that he use hot towels and try exercising to alleviate his symptoms.  [*Id.*].  In mid-October 2011, after submitting a kite asking to see a doctor instead of the physician's assistant, Colen was told

---

[4] A "kite" is a written communication by a prisoner to request services from prison staff, including medical care. *See Peterson v. Foco*, No. 1:09-CV-233, 2010 WL 5058352, at *2 (W.D. Mich. Dec. 6, 2010) (collecting cases).

that a nurse would determine whether he needed to see a medical provider, and he was not scheduled to see a doctor as he requested. [*Id.*, PgID 84].

In April 2012, Colen sent a healthcare kite describing his ongoing health issues. [*Id.*, PgID 85]. In September of the same year, he sent another kite requesting adequate healthcare and claiming that his civil rights were being infringed upon. [*Id.*]. Colen was seen in October by the same physician's assistant who previously diagnosed him with a sprained ankle and claims the physician's assistant refused to allow him to see a doctor, but he was scheduled for an x-ray of his ankle. [R. 13, PgID 85-86].

Colen says that on November 4, 2012, he sent a kite specifically addressed to the "ARF Health Unit Manager" (H.U.M.), once again describing his declining health and asking to know the corrective measures that would be taken to alleviate his symptoms. [*Id.*, PgID 86, 158-60]. He was scheduled for an appointment on November 13. [*Id.*, PgID 86]. Colen alleges that he sent another kite to H.U.M. Kopka on that date, telling her that he was being inhumanely treated and denied his "civil rights" and medical care. [*Id.*]. Colen claims that on November 15, 2012, H.U.M. Kopka responded to this kite, telling him to "[c]ontinue to kite if the symptoms do not improve." [*Id.*].

4

Throughout 2013, Colen sent various kites demanding to see a board certified doctor instead of a physician's assistant, asking to see a bone specialist, and explaining that his legs were painfully swollen. [R. 13, 88-92].  During this time, he claims that he sent multiple kites to healthcare staff before receiving appointments with physicians as opposed to nurses, and was seen on eight occasions by both ARF nurses and doctors.  [*Id.*].

Colen alleges that he was given a stocking to reduce the swelling in his leg, an ace bandage for his ankle and Tylenol, and that his legs were x-rayed.  But, he contends, he did not receive cortisone shots in his leg as promised by several doctors.  [*Id.*, PgID 89-90].  Additionally, Colen says that a doctor determined during this time that he required knee surgery and that his foot had indeed been previously broken and had healed improperly. [*Id.*].  According to Colen, he sent a kite to "H.U.M. T. Rothaar" on November 22, 2013, because he had run out of pain medication and was not scheduled for another doctor's appointment as he was promised.  [*Id.*, PgID 92].  He claims that an appointment was never scheduled and that he "continued for the rest of the year in pain."  [*Id.*].

After receiving knee replacement surgery in 2014, Colen avers that he continued to experience pain in his knee and ankle, and that he was provided inadequate medical care by a physical therapist, two ARF doctors,

5

and an ARF physician's assistant.  [R. 13, PgID 93-94].  Colen alleges that

he spoke directly to Warden Paul Klee about his poor health condition, and

that Warden Klee failed to provide him with adequate medical care.  [*Id.*,

PgID 95].  He claims that Warden Klee failed to instruct, train or supervise

his employees and that he should be liable for the actions of his employees

under a theory of *respondeat superior*.  [*Id.*, PgID 109].

According to Colen, the defendants demonstrated a continual pattern

of deliberate indifference to his medical needs, repeatedly denied him

adequate medical care, caused him to suffer emotional stress, were

negligent in their duties, and sanctioned or implemented policies and

practices that led to his denial of adequate medical care.  [*Id.*, PgID 96-105,

110].

## III.   ANALYSIS

The MDOC defendants argue that Colen's claims against them

should be dismissed because he has failed to exhaust all of his

administrative remedies prior to bringing suit and because his allegations

do not rise to the level of deliberate indifference to a serious medical need.

They further argue that the claim Colen raises against Nurse VanAusdale

was filed after the statute of limitations expired, and that claims against

Klee and Rothhaar fail to include their personal involvement in

6

unconstitutional behavior.  For the reasons stated below, the Court finds that Colen's claims should be dismissed.

## A.

A motion to dismiss pursuant to Rule 12(b)(6) tests a complaint's legal sufficiency, including whether its claims are facially plausible.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007)).  The complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief."  *League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly,* 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded factual allegations.  *Id.*; *see also Erickson v. Pardus,* 551 U.S. 89, 94 (2007).  While pleadings filed by *pro se* litigants are entitled to a more liberal reading, *Thomas v. Eby,* 481 F.3d

434, 437 (6th Cir. 2007), "[t]he leniency granted to pro se [litigants] ... is not boundless." *Martin v. Overton,* 391 F.3d 710, 714 (6th Cir. 2004). Such complaints must still plead a plausible claim for relief. *Davis v. Prison Health Servs.,* 679 F.3d 433, 437-38 (6th Cir. 2012).

Rule 56(a) provides that "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In deciding a summary judgment motion, the Court must view the factual evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587-88 (1986).

When feasible, the Court will decide exhaustion disputes before addressing the merits of the claims. *See Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014). A dismissal for failure to exhaust administrative

remedies, even when decided on summary judgment,[5] is without prejudice. *Boyd v. Corr. Corp. of America*, 380 F.3d 989, 994 (6th Cir. 2004).

## B.

The Prison Litigation Reform Act (PLRA) requires prisoners to "properly" exhaust all "available" administrative remedies prior to filing a lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006). Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court and produces a useful administrative record. *Jones v. Bock*, 549 U.S. 199, 204 (2007).

Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90, 93 (citation omitted) (emphasis in original). The PLRA does not detail what

---

[5] The majority of Circuit Courts that have addressed the issue – i.e., the Second, Third, Fifth, Seventh, and Ninth Circuits – hold that a motion for summary judgment is the proper procedure to decide exhaustion. *See Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014) (en banc) (collecting cases). Although it has not addressed the issue specifically, the Sixth Circuit appears to support the use of a summary judgment motion to resolve an exhaustion dispute. *See, e.g., Surles v. Andison*, 678 F.3d 452 (6th Cir. 2012) (reviewing district court's decision granting summary judgment for failure to exhaust administrative remedies under the PLRA); *Risher v. Lappin*, 639 F.3d 236 (6th Cir. 2011) (same).

"proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim," but it is self-evident that an untimely or otherwise improperly filed grievance does not fulfill the exhaustion requirement. *Id.*; *see also Woodford,* 548 U.S. at 97. Finding otherwise "would permit a prisoner to bypass deliberately and flagrantly administrative review without any risk of sanction." *Woodford,* 548 U.S. at 97. However, before a civil rights claim based on a grievance may be dismissed for failure to properly exhaust, prison officials must "clearly reject[] a grievance for a reason *explicitly* set forth in the applicable grievance procedure." *Burnett v. Howard*, No. 2:09-cv-37, 2010 WL 1286256, at *3 (W.D. Mich. Mar. 30, 2010) (emphasis added).

MDOC Policy Directive 03.02.130 sets forth a three-step procedure prisoners must follow in order to complete the administrative review process and properly exhaust grievances. A prisoner must attempt to informally resolve the problem with the allegedly offending staff, and then may file a Step I grievance regarding any unresolved issues with a

10

grievance coordinator.  MDOC Policy Directive 03.02.130, ¶ P and R

(effective July 9, 2007).[6]  The prisoner may then file a Step II grievance

appeal within ten days of receiving the Step I response or, if no response

was received, within ten business days after the date the response was

due.  *Id.* at ¶ BB.  The same schedule applies to a Step III appeal – it is due

within ten business days of receiving the Step II response or, if no

response was received, within ten business days after the date the

response was due.  *Id.* at ¶ FF.  Prisoners must appeal their grievances

through Step III and wait until receipt of a Step III response, or until the

response is past due, before filing suit.

When completing a grievance, prisoners are required to concisely

state the issues they are alleging and include the "[d]ates, times, places,

and names of all those involved in the issue being grieved."  *Id.* at ¶ R.  A

grievance may be rejected at any step if it alleges issues "that are

duplicative of those raised" in previously filed grievances, if it is "filed in an

untimely manner," or for failure to provide enough specificity.  *Id.* at ¶ G(1),

(3).  But they may not be rejected for a prisoner's failure to include

documents:

[G]rievances shall not be rejected or denied solely because the

---

[6] The Policy Directive is available at:
https://www.michigan.gov/documents/corrections/03_02_130_200872_7.pdf

prisoner has not included with his/her grievance exhibits or other documents related to the grievance … If the grievance references  documents and those documents are not in the prisoner's files or otherwise available to the grievance coordinator or respondent except   through the prisoner, the documents shall be reviewed with the prisoner as part of the grievance investigation process. If the grievance coordinator or respondent determines that a copy of a document is needed for the grievance investigation, the copy shall be made at department expense.

*Id.* at ¶ RR.

Although Colen only references four grievances he filed in relation to his claims, [R. 13, PgID 95-96], the MDOC defendants have identified five grievances.  [R. 71, PgID 547-51].  Defendants argue that Colen has not filed a grievance regarding his amended complaint allegations against any MDOC defendant and that his claims should be dismissed.  The Court disagrees in part, as there is a question of fact regarding whether two of Colen's grievances were properly exhausted.

### i. Grievances Unrelated to Colen's Claims in the Amended Complaint

ARF-13-06-1743-12D3 was filed in relation to Colen's claims against "Dr. Prasaada" for providing him with inadequate medical care.  [R. 13-1, PgID 216-18].  This grievance does not relate to any of Colen's claims against an MDOC defendant named in the amended complaint.

In ARF-13-06-1686-28B (ARF-13-06-1686-11Z), Colen grieved the

12

grievance coordinator, Mr. Eaton, about his (Colen's) inability to retrieve a "golden rod" copy from one of his previous grievances.  [R. 13-1, PgID 210].  This grievance was not directed against defendants VanAusdale, Kopka, or Klee.  [*Id.*].  Colen does mention the "Head Nurse," in reference to Head Nurse Rothhaar's position at ARF, which may be enough to put the defendant on notice. *See Kittle v. Squier,* No. 2:11-cv-97, 2012 WL 5473142, *2 (W.D. Mich. 2012) (finding that, in "some circumstances the Court will find that a grievance sufficiently puts a staff member on notice despite not naming them …"). But the only claims Colen brings against Rothhaar in his amended complaint pertain to her failure to schedule him with a doctor's appointment and, by extension, her failure to provide him with adequate medical care.  [R. 13, PgID 92, 99].  Colen's allegations against Rothhaar in the amended complaint do not relate to the claims in the grievance.

### ii.  Colen's Claims Relating to the Named Defendants

In ARF-13-10-3050-12D1, Colen alleged that the "ARF Healthcare Staff and Administration" were deliberately indifferent to his medical needs over a three year period.  [R. 40-3, PgID 318].  This grievance was rejected by ARF personnel for being duplicative of a previous grievance filed by Colen, and thus was not properly exhausted.  *Burnett*, 2010 WL 1286256,

13

at *1.

Colen filed ARF-13-09-2586-12D1 ("2586-12D1") in August 2013,
stating, "I am continually being denied medical treatment for the injury
sustained on my foot where I have broken bones and torn ligaments which
have worsened over the last two years." [*Id.*, PgID 323]. He emphasized,
"I have tried unsuccessfully to resolve my condition with the Health care
staff, and the Adrian Administration. Nothing is being done to correct my
foot, knee and leg, and I am in excruciating pain." [*Id.*]. He alleged that
"Health Care and the Adrian Staff are being deliberately indifferent by
purposefully ignoring my request [to see a specialist and receive injections]
and ailment." [*Id.*].

In a previous report and recommendation, the Court noted that this
grievance was resolved on its merits by the MDOC, and not rejected for
any procedural error. [R. 46, PgID 456, *adopted by* R. 77]. When the state
fails to follow its own procedural rules and instead decides a grievance on
its merits, it waives the argument that the grievance was not properly
exhausted. *See Reed Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir.
2010). In fact, MDOC went to the length of informing Colen that the Step III
grievance denial represented an exhaustion of his administrative remedies.
[R. 13, PgID 320]. Furthermore, the Judge Borman rejected defendants'

14

narrow interpretation that grievance 2586-12D1 was an isolated complaint about a single missed steroid injection.  [R. 77, PgID 609].

Here, Colen's amended complaint alleges claims against Rothhaar in November 2013 and against Kopka in November 2012, [R. 13, PgID 86, 92], several months removed from the allegations in grievance 2586-12D1. As such, the present claims against them are unexhausted by this grievance.  But the same cannot be said for defendants VanAusdale or Klee; though the grievance does not name them, it was not rejected by the MDOC for that reason, and has thus been found to exhaust claims against similarly situated parties in this case previously.  [*See* R. 40; R. 77].  It is, therefore, the law of the case that the claims against VanAusdale and Klee are exhausted by grievance 2586-12D1.  *Hayden v. Rhode Island*, 13 F.App'x 301, 302 (6th Cir. 2001) (law of the case dictates that an issue decided should not be reopened absent extraordinary circumstances).

### iii.  Colen's Grievance Against H.U.M. Kopka

Colen filed grievance ARF-13-04-1390-12D3 (grievance 1390-12D3) in April 2013, complaining of continuous unfulfilled requests for an appointment with a medical doctor and the failure of P.A. Jindall and other ARF medical staff to provide him with adequate medical care beginning in 2010.  [R. 13-1, PgID 198-201].  Defendants' argue that this grievance was

15

simply a complaint against one "Healthcare individual [who] failed to

properly diagnose [Colen's] knee and foot injuries" and does not name any

of the defendants, [R. 71, PgID 549], but the Court disagrees.  The

grievance complains about various medical staff and specifically claims that

the "ARF Health Unit Manager" was unresponsive to complaints and

requests to see a physician and specialist, and had discriminated against

him.  [R. 13-1, PgID 198-201].  This grievance matches the claims that

Colen made against H.U.M. Kopka in the amended complaint. [R. 13, PgID

86, ¶¶ 32-33].  Nonetheless, the grievance makes no mention of

VanAusdale, Rothhaar, or Klee, by either name or position, so the

grievance does not exhaust claims against them.

Grievance 1390-12D3 was rejected as untimely at Step II, so

defendants also argue that Colen failed to properly exhaust it, but Colen

responds that his tardiness was the fault of grievance officials.  In order to

fulfill the exhaustion requirement, prisoners are only required to exhaust

administrative remedies that are "available" to them.  *See* 42 U.S.C. §

1997e(a).  Thus, if a plaintiff "were improperly denied access to the

grievance process, the process would be rendered unavailable …" *Hawkins*

*v. Northwood,* No. 1:10-cv-432, 2010 WL 3398793, at *10 (W.D. Mich. Aug.

25, 2010).  There is a genuine issue of material fact as to whether Colen

16

attempted to file the appeal on time and was improperly prevented from doing so.

Colen filed grievance 1390-12D3 at Step I on April 27, 2013, and did not receive a response to this grievance until June 14, 2013, [R. 13-1, PgID 198], even though he received a letter confirming the receipt of his Step I grievance that listed the due date for the response as May 20, 2013.  [*Id.*, PgID 202].  When he did not receive a response in time, Colen was required by MDOC policy to request an appeal form from the grievance coordinator "and send the completed form to the Step II Grievance Coordinator" within ten business days.  MDOC Policy Directive 03.02.130, ¶ BB.

Colen states that he had accidentally failed to retain the golden rod copy of his Step I grievance and that ARF personnel prevented him from timely filing his grievance by failing to return the copy to him before the deadline to file had run.  On the Step II appeal form, it indicates that Colen filled out the document on May 27, 2013, before the deadline for the Step II appeal.  [R. 13-1, PgID 209].  In addition, Colen indicates that he attempted to file appeals on May 29 and June 2, 2013, but that they were rejected because Colen did not include a golden rod copy of his Step I grievance form.  [R. 74, PgID 574].  He states that his attempts to have the golden rod

17

copy of his Step I grievance were unavailing and he complained to the

grievance coordinator that he was being denied access to the grievance

process.  [*Id.*].  Nonetheless, the grievance was rejected as untimely at

Step II because the appeal was not received until July 22, 2013.  [R. 13-1,

PgID 206].

   Letters in the record corroborate Colen's account.  A May 29, 2013

letter from Colen directed to Grievance Coordinator Eaton "humbly"

requests that he receive his golden rod copy back so that he can comply

with the process; a response indicates that "all copies are with the

responder.  I can't get back until it's returned.  This is why you keep the

gold." [R. 40-3, PgID 340].  A letter from Grievance Coordinator Eaton to

Colen on June 3, 2013 informed him that his Step II grievance appeal was

being returned to him because he needed to attach the "white or golden rod

copy" for the appeal to be processed.  [R. 40-3, PgID 341].  Together,

these documents and Colen's contentions create a genuine issue of

material fact as to whether he was improperly denied access to the

grievance process and whether his appeal was improperly denied.

   The MDOC Policy Directive only requires prisoners to fill out and file

a Step II appeal form after not receiving a Step I response.  03.02.130, ¶

BB.  It does not require prisoners to include additional documents, such as

18

the golden rod copy, that must be attached to the form itself.  In fact, ¶ H of
the policy bars MDOC personnel from denying a grievance solely because
it does not have specific documents attached.  *Id.*  The only mention of a
golden rod copy is on the Step II grievance form itself; there is no such
requirement in the MDOC Policy Directive.  Under MDOC Policy Directive
03.02.130, ¶ H, a "completed" Step II appeal form is not required to include
such a document.

Based upon the above, a question of fact remains with respect to
whether Colen sufficiently exhausted his claims against defendants
VanAusdale, Klee and Kopka.  His claims against those defendants should
nonetheless be dismissed for other reasons.

## C.

As defendants note, Colen's claim against VanAusdale is barred by
the statute of limitations for § 1983 suits filed in Michigan.

For actions brought pursuant to § 1983, federal courts apply state
personal injury statutes of limitation.  *Collard v. Kentucky Bd. Of Nursing,*
896 F.2d 179, 180-81 (6th Cir. 1990).  In Michigan, the statute of limitations
for § 1983 suits is three years.  Michigan Compiled Laws § 600.5805(10);
*McCune v. City of Grand Rapids,* 842 F.2d 903, 905 (6th Cir. 1988).  A
plaintiff, therefore, is required to file suit within three years of the accrual of

19

his claims. *Id.* "[T]he statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *McCune*, 842 F.2d at 905.

Here, Colen alleges that VanAusdale failed to properly schedule an appointment for him to see a doctor for his leg injuries on May 11, 2011. [R. 13, PgID 83]. The three year statute of limitations thus ended on May 11, 2014, but Colen did not file the current suit until July 25, 2014, more than two months too late. [R. 1]. Colen asserts that his complaint was timely because of defendants' "continued pattern of deliberate indifference," but he did not allege a continued pattern on the part of VanAusdale, and his complaint against her is untimely.

### D.

Colen alleges that Warden Klee was responsible for the administration and functions at ARF, and that he is liable under the theory of *respondeat superior* for the actions of those that he supervised. [R. 13, PageID 99-100, 108]. He also alleges that he spoke directly to Klee concerning his condition. [*Id.*, PageID 95].

*Respondeat superior* is not a basis for liability in a § 1983 action. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Supervisory personnel may be held individually liable for failure to

20

adequately supervise, control, or train employees.  *Rizzo*, 423 U.S. at 385.

But to maintain such a claim, it is not enough that a supervisor simply had

the "right to control employees."  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th

Cir. 1999).  Rather, a plaintiff must properly allege facts showing a "causal

connection" between the alleged misconduct of employees and actions of

supervisors demonstrating their endorsement of the unconstitutional

conduct.  *Rizzo*, 423 U.S. at 371.  To establish such a causal connection,

the official must have either "encouraged the specific incident of

misconduct or in some other way directly participated in it."  *Bellamy v.*

*Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  *See also Hays v. Jefferson*

*County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982) ("At a minimum, a plaintiff

must show that the official at least implicitly authorized, approved or

knowingly acquiesced in the unconstitutional conduct of the offending

officers").

Here, Colen has not attempted to show a causal connection between

Klee's actual conduct and the alleged misconduct of others.  And though he

does allege direct contact with Klee, he fails to point to any act of Klee's

that was unconstitutional.  Colen's claims against Klee should be dismissed

with prejudice.

21

**E.**

Summary judgment of Colen's deliberate indifference claim against Kopka should be granted as well.

The Eighth Amendment's Cruel and Unusual Punishment Clause prohibits prison officials from inflicting "unnecessary and wanton infliction of pain" upon inmates. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (internal citations omitted). "'Deliberate indifference' by prison officials to an inmate's serious medical needs constitutes 'unnecessary and wanton infliction of pain' in violation of the Eight[h] Amendment's prohibition against cruel and unusual punishment." *Miller v. Calhoun Cty.*, 408 F.3d 803, 812 (6th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

A deliberate indifference claim has an objective and a subjective component. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). The objective component requires a plaintiff to allege that the medical need at issue is "'sufficiently serious.'" *Id.* at 702-03 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703. However, a plaintiff

22

does not have to show that the prison official acted "for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. Rather, a plaintiff need only show that the official "recklessly disregard[ed]" a substantial risk of serious harm. *Id.* at 836.

The MDOC defendants did not challenge in their brief that Colen's injuries constitute a serious medical condition, [R. 71, PgID 559], so the objective component is not at issue here. They do argue that there is no genuine dispute pertaining to their alleged deliberate indifference and the Court agrees.

Colen alleges that, on November 4, 2012, he sent a kite to the ARF healthcare claiming that his injuries were "getting worse" and requesting to see the results of a recent x-ray of his legs." [R. 13, PgID 86]. He says that a nurse responded and scheduled him to see the "MP" on November 13. [*Id.*]. On the day of the appointment, Colen claims that he sent a kite to H.U.M. Kopka making her fully aware of his "situation from the beginning of his injury to that present time" and stating that he was being "denied urgent medical care," "treated inhumanely," and "denied his civil rights." [*Id.*]. He alleges that she responded by simply telling him to "[c]ontinue to kite if the symptoms do not improve." [*Id.*]. As a result, Colen says that he was denied treatment for the rest of 2012 and that he "remained in steadily

increasing agony and pain."  [*Id.*].

But Kopka's November 15, 2012, response to a kite that Colen had submitted two days undermines his claim that she was deliberately indifferent to his medical needs.  [R. 13, PgID 162].  Kopka noted in that response that Colen had seen a MP on November 13 (the same day as the kite) in order to review an x-ray of his legs as requested and that he had several prior visits with the MP regarding his left foot injury.  [*Id.*].  She invited Colen to continue to kite if symptoms did not improve.  [*Id.*].  No reasonable jury would find Kopka's response to Colen's kite or to his medical needs to be was deliberately indifferent, and summary judgment should be entered in her favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986).

Further, since Colen has not established that Kopka violated his constitutional rights, she is entitled to qualified immunity.  *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005) (qualified immunity applies when defendant has not violated a clearly established constitutional right).

## IV.   CONCLUSION

For the foregoing reasons, the MDOC defendants' motion to dismiss and/or for summary judgment [R. 71] should be **GRANTED**, the claims against Rothhaar should be **DISMISSED WITHOUT PREJUDICE**, and the remaining claims should be **DISMISSED WITH PREJUDICE**.

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD<br>
United States Magistrate Judge

Dated: August 15, 2017

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

25

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 15, 2017.

<u>s/Marlena Williams</u>
MARLENA WILLIAMS
Case Manager